Green, J.
delivered the opinion of the court.
This is an indictment for forgery. It charges in sub *63 stance, that the defendant had in his possession a bill single for $43 50, executed and delivered to him by Jeremiah S. Evans and John G. Smith; upon the back of which were two endorsements, in the proper handwriting of the defendant, giving credit for the sums of money therein specified. The latter endorsement, which forms the subject matter of the supposed forgery, is in the following words and figures, viz., ‘’Received, 23d October, 1841, five dollars.” The indictment further charges, that the defendant “falsely, fraudulently, and feloniously, did alter the said last-mentioned credit, on the back of said writing obligatory, which was a credit of five dollars paid by the said Jeremiah S. Evans to the said Samuel Martin, by drawing a black line, with ink, through the said credit for five dollars, on the writing obligatory aforesaid, and by obliterating the said credit of five dollars, so as aforesaid entered upon the said writing obligatory,” with intent to prejudice the rights of the said Jeremiah S. Evans and John G. Smith, &c.
The defendant appeared and demurred to the indictment; the court sustained the demurrer, and the Attorney General, in behalf of the State, prayed and obtained an appeal in error to this court. The question for our consideration is: Do the allegations and averments of the indictment make out a case of forgery, within the intent and meaning of the act of 1839, ch. 23 sec. 31?
In the case of The King vs. Mason, 1 Leach, 487, it is laid down, “that the offence of forgery must be plainly stated on the face of the indictment, that the court may see that the charge is of that species which the law has denominated an offence:” we need not, in this case, stop to enquire whether or not the forgery of a receipt, or acquittance in the proper sense of these terms, would amount to forgery under the statute referred to. For, conceding that it would, *64 it is very clear that the endorsement, or credit, as it is alternately styled in the indictment, does not upon its face purport to be'either a receipt or an acquittance; nor, as set forth is it such a writing as can be the subject of forgery. We do not mean to be understood as holding that the endorsement of a part payment upon a note, or bill single may not have, in all respects, the force and effect of a formal receipt or acquittance, if designed so to operate: on the contrary, if made with the knowledge of the parties, and by their mutual concurrence and agreement, and for the express purpose of making it evidence of the payment or extinguishment of so much of the debt due by such note or bill single, it is difficult to perceive why it should not have such effect and operation given to it. Nor is it even necessary, in deciding this case, to hold, that a mere memorandum of payment placed upon a note or bill single, in less technical and solemn form, may not, under certain circumstances, have such effect and operation. It is sufficient that the writing in question, as described and set forth in this indictment, is not of a character to make the alteration or obliteration thereof forgery. In the case of The King vs. Hunter, 2 Leach. 624, which was an indictment for forging a receipt, it is laid down, “that the instrument intended to have been used as a receipt must appear upon the face of the instrument, so set out, that it is a receipt; and ’ supposing the words, letters, or figures, charged to have been forged, do not, of themselves, purport to be a receipt, there must be an averment of some facts> stating that the words, letters or figures, import and signify a receipt. It is not enough, in an indictment for forgery merely to call the paper writing, charged to have been forged, a .receipt, but it must show that the writing either *65 purports to be a receipt on tbe face of it, or aver that it was intended to be used as a receipt.”
The endorsement upon the bill single in this case, charged to have been obliterated, does not, upon its face, purport to be a receipt or acquittance; it is not so styled, nor is it averred that it was intended so to operate. It is not signed by any one, nor does it show by whom, or from whom, or on what account, the money was received. There is nothing averred in the indictment to show that the endorsement was placed upon the bill single with the knowledge of, or at the request of the obligors; or that it was intended as a receipt or acquittance; or that their rights could be effected either by the making, or the obliteration thereof. For any thing appearing in the record, it was a mere memorandum voluntarily made by the defendant, perhaps through inadvertence or mistake, in which the obligors had no interest, and the obliteration of which could not, in legal contemplation, prejudice their rights. It might as well have been made by the defendant, if made at all, upon his day-book, or on a separate piece of paper, in which case no one would have questioned his right to deface or destroy, it at pleasure; and its mere juxtaposition in reference to the bill single, which alone gives color to the mistaken idea of an infringement of the law, or the rights of the obligors, cannot in the least degree change the complexion of the case. In obliterating the memorandum, from all that we can see of the case, the defendant was guilty of neither legal or moral wrong.
The idea of a fraudulent purpose would seem to be repelled by the simple fact, that the first and larger credit endorsed on said bill single, remains untouched.
We think there is no error in the judgment of the Circuit Court, sustaining the demurrer.